UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOHN HARDNEY,<br><br>    Plaintiff,<br><br>    v.<br><br>R. WARREN, *et al.*,<br><br>    Defendants. | Case No. 2:16-cv-00172-KJM-JDP (PC)<br><br>FINDINGS AND RECOMMENDATIONS THAT DEFENDANTS' MOTION FOR SUMMARY JUDGMENT BE DENIED<br><br>ECF No. 135<br><br>OBJECTIONS DUE WITHIN 14 DAYS<br><br>ORDER GRANTING DEFENDANTS' MOTION TO STRIKE<br><br>ECF No. 138 |

Plaintiff John Hardney is a state prisoner proceeding without counsel in an action brought under 42 U.S.C. § 1983. He alleges two claims under the Eighth Amendment: (1) that defendant Kumeh was deliberately indifferent to his serious medical needs by not providing medical treatment after witnessing other staff use force against him; and (2) that defendant Brazil used excessive force against him.[1] Defendants move for summary judgment.

---

[1] The first amended complaint also alleged excessive force claims against three other defendants—Pogue, Hickman, and Almodovar. ECF No. 10. The court previously dismissed those claims, finding that they were barred under *Heck*'s favorable termination rule. ECF Nos. 82 & 83; *see Heck v. Humphrey*, 512 U.S. 477 (1994).

1

**Background**

On October 10, 2014, correctional staff informed plaintiff that he was being moved to administrative segregation in response to accusations that he had been masturbating within the sight of prison staff. ECF No. 139-1 at 2. Plaintiff was placed in handcuffs and escorted to the prison's medical clinic, where defendant Kumeh—a licensed vocational nurse—was directed to perform a medical examination.[2]  *Id*. at 2-3. While Kumeh was conducting the evaluation, an officer slammed plaintiff's head into a plexi-glass window. *Id*. at 3. Plaintiff was then escorted to the prison's program office, approximately fifteen yards away from the medical clinic. *Id*. at 3-4; ECF No. 75 at 220. The officer then slammed plaintiff's face into a wall and swept his legs out from underneath him, causing him to fall and hit his head. *See* ECF No. 139-1 at 4. At some point during the altercation, plaintiff's forehead was cut, causing blood to flow down his face.[3] *Id*. at 3. In his declaration, plaintiff adds that he briefly lost consciousness and sustained abrasions to his knees and a significant amount of pain. ECF No. 135-9 at 19.

Plaintiff claims that Kumeh was present during the entire incident. *See* ECF No. 139-1 at 4; ECF No. 135-9 at 14-18. He says that Kumeh approached him to "observe[] his bleeding face and ignored [his] cry for help." ECF No. 10 at 9; ECF No. 135-9 at 17-18. Kumeh, however, disputes that plaintiff sustained any significant injury. Although he does not recall the incident, he states that the medical report that he completed on the same date noted that plaintiff "did not have any physical injuries."[4]  ECF No. 135-4 at 2.

Later that day, defendant Brazil escorted plaintiff to the administrative segregation building and placed him in a holding cell. ECF No. 139-1 at 5. According to plaintiff, Brazil

---

[2] Defendants' motion suggests that plaintiff needed to undergo a medical evaluation before he could be moved to administrative segregation. ECF No. 135-1 at 2.

[3] Plaintiff has provided conflicting statements as to when the cut occurred. In his declaration, he states that he sustained the cut when his face was slammed into the plexi-glass window in the medical clinic. ECF No. 139-1 at 3. Conversely, he testified at his deposition that his fall in the program office caused the cut. ECF No. 139-9 at 15-19. The discrepancy over the specific act that caused the cut is not material to the resolution of the instant motion.

[4] Defendants' motion frequently references Kumeh's October 10 report as evidence that plaintiff was not injured on that date. However, they did not submit a copy of that report; instead, they ask the court to accept Kumeh's characterization of the information documented in the report.

2

removed his handcuffs and challenged him to fight. *Id*. When plaintiff remained standing in the cell, Brazil entered, grabbed him, and "slammed [his] head and body from one side of the cage to the other side." *Id*. at 6. After leaving briefly to retrieve a "safety triangle," Brazil handcuffed plaintiff behind his back and moved him to a cell on the second floor. *Id*. Brazil then instructed plaintiff to place his hands in cell door's food port so that he could remove the handcuffs. *Id*. at 7. Plaintiff contends that he complied, but instead of removing the handcuffs, Brazil attached the safety triangle and pulled hard on it several times, repeatedly pulling plaintiff's arms through the food port and causing him to cry out in pain. *Id*. Two other prisoners in the administrative segregation building attest to seeing plaintiff enter with Brazil, hearing "bodies being slammed against the cage," and, after seeing Brazil escort plaintiff to another cell, hearing plaintiff scream in pain. *Id*. at 27-28. Plaintiff claims that he was left lying in pain on the cell floor, surrounded by droplets of his blood. *Id.* at 8.

**Legal Standard**

Summary judgment is appropriate where there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Washington Mutual Inc. v. United States*, 636 F.3d 1207, 1216 (9th Cir. 2011). An issue of fact is genuine only if there is sufficient evidence for a reasonable fact finder to find for the non-moving party, while a fact is material if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Wool v. Tandem Computs., Inc.*, 818 F.2d 1422, 1436 (9th Cir. 1987).

Rule 56 allows a court to grant summary adjudication, also known as partial summary judgment, when there is no genuine issue of material fact as to a claim or a portion of that claim. *See* Fed. R. Civ. P. 56(a); *Lies v. Farrell Lines, Inc.*, 641 F.2d 765, 769 n.3 (9th Cir. 1981) ("Rule 56 authorizes a summary adjudication that will often fall short of a final determination, even of a single claim . . . .") (quotation marks and citation omitted). The standards that apply on a motion for summary judgment and a motion for summary adjudication are the same. *See* Fed. R. Civ. P. 56(a), (c); M*ora v. Chem-Tronics*, 16 F. Supp. 2d 1192, 1200 (S.D. Cal. 1998).

Each party's position must be supported by (1) citations to particular portions of materials in the record, including but not limited to depositions, documents, declarations, or discovery; or (2) argument showing that the materials cited do not establish the presence or absence of a genuine factual dispute or that the opposing party cannot produce admissible evidence to support its position. *See* Fed. R. Civ. P. 56(c)(1) (quotation marks omitted). The court may consider other materials in the record not cited by the parties, but it is not required to do so. *See* Fed. R. Civ. P. 56(c)(3); *Carmen v. San Francisco Unified Sch. Dist.*, 237 F.3d 1026, 1031 (9th Cir. 2001); s*ee also Simmons v. Navajo Cnty., Ariz.*, 609 F.3d 1011, 1017 (9th Cir. 2010).

"The moving party initially bears the burden of proving the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). To meet its burden, "the moving party must either produce evidence negating an essential element of the nonmoving party's claim or defense or show that the nonmoving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial." *Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Cos., Inc.*, 210 F.3d 1099, 1102 (9th Cir. 2000). If the moving party meets this initial burden, the burden shifts to the non-moving party "to designate specific facts demonstrating the existence of genuine issues for trial." *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 387 (citing *Celotex Corp.*, 477 U.S. at 323). The non-moving party must "show more than the mere existence of a scintilla of evidence." *Id.* (citing *Anderson*, 477 U.S. at 552). However, the non-moving party is not required to establish a material issue of fact conclusively in its favor; it is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Assoc.*, 809 F.2d 626, 630 (9th Cir. 1987).

The court must apply standards consistent with Rule 56 to determine whether the moving party has demonstrated there to be no genuine issue of material fact and that judgment is appropriate as a matter of law. *See Henry v. Gill Indus., Inc.*, 983 F.2d 943, 950 (9th Cir. 1993). "[A] court ruling on a motion for summary judgment may not engage in credibility determinations or the weighing of evidence." *Manley v. Rowley*, 847 F.3d 705, 711 (9th Cir. 2017) (citation omitted). The evidence must be viewed "in the light most favorable to the

nonmoving party" and "all justifiable inferences" must be drawn in favor of the nonmoving party. *Orr v. Bank of America, NT & SA*, 285 F.3d 764, 772 (9th Cir. 2002); *Addisu v. Fred Meyer, Inc.*, 198 F.3d 1130, 1134 (9th Cir. 2000).

## Analysis

### A. Defendant Kumeh

Plaintiff alleges that defendant Kumeh violated his Eighth Amendment rights when he refused either to provide medical care or to document plaintiff's injuries. "[T]o maintain an Eighth Amendment claim based on prison medical treatment, an inmate must show 'deliberate indifference to serious medical needs.'" *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006) (quoting *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)). The two-prong test for deliberate indifference requires a plaintiff to show (1) "'a serious medical need' by demonstrating that 'failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain,'" and (2) that "the defendant's response to the need was deliberately indifferent." *Jett*, 439 F.3d at 1096 (quoting *McGuckin v. Smith*, 974 F.2d 1050, 1059 (9th Cir. 1992)).

"This second prong—defendant's response to the need was deliberately indifferent—is satisfied by showing (a) a purposeful act or failure to respond to a prisoner's pain or possible medical need and (b) harm caused by the indifference." *Id.* (citing *McGuckin*, 974 F.2d at 1060). Indifference may be manifest "when prison officials deny, delay or intentionally interfere with medical treatment, or it may be shown by the way in which prison physicians provide medical care." *Id.* "Deliberate indifference is a high legal standard." *Toguchi v. Chung*, 391 F.3d 1051, 1060 (9th Cir. 2004). "Under this standard, the prison official must not only 'be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists,' but that person 'must also draw the inference.'" *Id.* at 1057 (quoting *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)). "If a prison official should have been aware of the risk, but was not, then the official has not violated the Eighth Amendment, no matter how severe the risk." *Id.* (quoting *Gibson v. Cnty. of Washoe*, 290 F.3d 1175, 1188 (9th Cir. 2002)).

Defendant Kumeh argues that he is entitled to summary judgment because, "other than Plaintiff's own self-reports," there is no evidence that plaintiff had a serious medical need. ECF No. 135-1 at 8. Kumeh contends that medical records—including the report he completed on the day of the incident—do not support plaintiff's claimed injuries. *Id.*

As a threshold matter, Kumeh's argument necessarily asks the court to disregard the statements in plaintiff's declaration. Plaintiff swears that the statements in his declaration are based on personal knowledge and are "true and correct." ECF No. 139-1 at 1, 15. Accordingly, plaintiff's statements constitute evidence that must be considered in deciding defendants' motion for summary judgment. *See Johnson v. Meltzer*, 134 F.3d 1393, 1400 (9th Cir. 1998).

In his declaration, plaintiff states that Kumeh witnessed a correctional officer slam his head into a plexi-glass window and sweep his legs out from under him, causing him to hit his head on the floor. ECF No. 139-1 at 3-4. He further states that he briefly lost consciousness and sustained a cut to his forehead, "causing blood to flow down [his] face." He claims that Kumeh, despite observing the use of force and resulting injuries, refused to provide medical treatment or to document the injuries. *Id.* at 4. These statements alone are sufficient to create a genuine dispute as to whether Kumeh was aware that plaintiff had a serious medical need. *See Ross v. Wash. State Dep't of Corr.*, No. 3:16-cv-05469-RJB, 2018 WL 294502, at *3 (W.D. Wash. Jan. 3, 2018) (observing that "[w]hen an inmate sustains a head injury, whatever the cause, this may be the type of injury that goes beyond the routine discomfort that results from incarceration"); *Scalia v. Cty. of Kern*, 308 F. Supp. 3d 1064, 1077 (E.D. Cal. 2018) (finding that allegations of serious blows to the head "easily meet the first prong . . . because of the risk of a traumatic brain injury"); *Carter v. Gastelo*, No. 2:19-cv-08986-JGB-MAA, 2020 WL 5079052, at *2, *7 (C.D. Cal. Mar. 16, 2020) (finding that a plaintiff had a "serious medical need" when, after falling head-first into "exposed concrete dirt and gravel piles . . . [, he] had the wind knocked out of him . . . [and sustained] visual abrasions to his head").

Furthermore, there is no merit to defendants' argument that plaintiff's statements are unsupported by his medical records. The medical records show that plaintiff frequently complained of headaches in the days following the altercation. *Id.* at 10, 12, 14. An October 11,

2014 treatment note also reflects that plaintiff had a small abrasion on his knee, while an October 13, 2014 record documented an abrasion on his forehead.[5] ECF No. 135-5 at 9, 13.

Kumeh further argues that "even assuming plaintiff did have the injury," plaintiff's claim fails because Kumeh's inaction amounted only to a brief delay, and plaintiff has not shown "that the delay caused significant harm." ECF No. 135-1 at 9. "[A] finding that a defendant's actions . . . resulted in significant injury to a prisoner is [not] required in order to establish a violation . . . [, although such a] finding provides great support for a claim that a defendant was 'deliberately indifferent' to the inmate's medical needs." *McGuckin*, 974 F.2d at 1050. Where a plaintiff claims that prison medical staff knew of his serious medical needs and deliberately refused to render treatment or medical attention, the plaintiff needs to show only that the denial inflicted pain or suffering. *See Estelle*, 429 U.S. at 103 ("In less serious cases, denial of medical care may result in pain and suffering which no one suggests would serve any penological purpose. The infliction of such unnecessary suffering is inconsistent with contemporary standards of decency as manifested in modern legislation."); *McGuckin*, 974 F.2d at 1059 (explaining that the "unnecessary and wanton infliction of pain" constitutes a violation of the Eighth Amendment).

Plaintiff claims that Kumeh approached him, observed him bleeding from the forehead, heard his requests for help, and nonetheless refused to provide medical attention. This evidence is sufficient to create a genuine dispute as to whether Kumeh's conduct resulted in the unnecessary and wanton infliction of pain. *See Williams v. Sotelo*, 295 F. App'x 208 (9th Cir. 2008) (finding that the plaintiff "suffer[ed] a constitutional injury" when he was forced to wait at least an hour with severe chest pains before receiving medical attention); *Harris v. Kennedy*, No. 2:16-cv-0588 DB P, 2018 WL 347798, at *7-8 (E.D. Cal. Jan. 9, 2018) (recommending denial of summary judgment to a defendant prison official who forced a prisoner, who had cut his wrist, to

---

[5] Defendants note that plaintiff's forehead abrasion was only documented on October 13, 2014. They argue that since earlier examinations did not identify a similar abrasion, "it is likely the forehead abrasion occurred *after* Plaintiff's interaction with Kumeh on October 10." ECF No. 135-1. Absent evidence suggesting a separate injury resulted in the forehead abrasion, a reasonable jury could conclude that it resulted from altercations Kumeh witnessed. *See Orr*, 285 F.3d at 772 (holding that on summary judgment, the court must view "the evidence in the light most favorable to the nonmoving party and draw[] all justifiable inference in its favor").

wait until the following morning before receiving medical attention, on the grounds that the delay inflicted unnecessary pain).

Alternatively, Kumeh argues that he is entitled to qualified immunity. To assess whether qualified immunity attaches, a court asks "two questions: (1) whether the facts, taken in the light most favorable to the non-moving party, show that the official's conduct violated a constitutional right, and (2) whether the law at the time of the challenged conduct clearly established that the conduct was unlawful." *Felarca v. Birgeneau*, 891 F.3d 809, 815 (9th Cir. 2018). As just explained, there is a genuine dispute as to whether Kumeh violated plaintiff's Eighth Amendment rights. As for the second prong, it was clearly established at the time of the incident that refusing to provide medical attention to a prisoner with a serious medical need constitutes a violation of the Eighth Amendment. *See McGuckin*, 974 F.2d at 1059. It was, moreover, clearly established by 2014 that a prisoner has a serious medical need when they fall and sustain a head injury. *See Ortiz v. Imperial*, 884 F.2d 1312 (9th Cir. 1989). Accordingly, I find that defendant Kumeh is not entitled to qualified immunity.

### B. Defendant Brazil

The Eighth Amendment prohibits those who operate our prisons from using "excessive physical force" against inmates. *Wilkins v. Gaddy*, 559 U.S. 34 (2010) (per curiam); *Hudson v. McMillian*, 503 U.S. 1, 8-9 (1992). For claims arising out of the use of excessive physical force, the core inquiry is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Wilkins*, 559 U.S. at 37 (quoting *Hudson*, 503 U.S. at 7). To facilitate this inquiry, the Supreme Court has articulated five factors to consider: "(1) the extent of injury suffered by an inmate; (2) the need for application of force; (3) the relationship between that need and the amount of force used; (4) the threat reasonably perceived by the responsible officials; and (5) any efforts made to temper the severity of a forceful response." *Hudson*, 503 U.S. at 7.

Defendant Brazil argues that plaintiff's allegations are implausible because his observed injuries—a "small abrasion" on his knee, an abrasion on his forehead, "a couple 'knots' on his head," and a sprained left wrist—do not align with his allegations that "Brazil slammed his head

8

against the steel sides of a holding cell, and also used a retention triangle chain device to pull [his] handcuffs . . . and arm through the food port." ECF No. 135-1 at 11. Brazil also questions whether plaintiff's injuries can be attributed to him, given plaintiff's other allegations and the piecemeal nature of plaintiff's diagnoses over the course of several days.

The Eighth Amendment is violated whenever "prison officials maliciously and sadistically use force to cause harm . . .[,] whether or not significant injury is evident." *Hudson*, 503 U.S. at 9. To be sure, "the prohibition of cruel and unusual punishment necessarily excludes from constitutional recognition de minimis uses of physical force," such as a "push or shove that causes no discernible injury." *Wilkins*, 559 U.S. at 37 (internal citations and quotation marks omitted). But the extent of injury suffered is merely a proxy for that determination: "[i]njury and force . . . are only imperfectly correlated, and it is the latter that ultimately counts." *Id*. at 38. "An inmate who is gratuitously beaten by guards does not lose his ability to pursue an excessive force claim merely because he has the good fortune to escape without serious injury." *Id*.

Plaintiff' provided a sworn declaration attesting that Brazil removed his handcuffs, challenged him to fight, and slammed him against the walls of a holding cell, before needlessly and repeatedly pulling his arms through a food port while they were handcuffed behind his back. Subsequent medical evaluations identified abrasions on his head, knee, and wrist, diagnosed him with a sprained wrist, and prescribed pain killers for a headache that persisted for at least four days. While the injuries might have been expected to be worse, they do not require a rejection of his allegations.

Brazil cites *Solomon v. Felker*, in which the court granted summary judgment to defendants "after finding that the plaintiff-prisoner's allegations that officers had beaten him were not supported by the medical record." ECF No. 135-1 at 10 (citing No. 2:08-cv-2544-KJN (P), 2015 WL 1469165 (E.D. Cal. Mar. 30, 2015)). But the court in Solomon found that defendants had met their burden by proffering several declarations that disputed the plaintiff's account of the incident, which in turn was supported only by the allegations in his complaint. *Solomon*, 2015 WL 1469165 at *6-9. In contrast, plaintiff has submitted a sworn declaration, and there is no contrary evidence rebutting plaintiff's description of Brazil's use of force. Thus, Brazil has failed

1 | to show the absence of a genuine dispute of material fact.

2 | Accordingly, I recommend that the motion for summary judgment be denied.

### Motion to Strike

Defendants move to strike from the record plaintiff's earlier motion to compel arbitration, ECF No. 136, on the grounds that it contains confidential information obtained during settlement negotiations. ECF No. 138. Federal Rule of Civil Procedure 12(f) provides that a court "may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). I have reviewed the contents of plaintiff's motion—which has already been resolved in defendants' favor—and determine that it includes several improper references to confidential statements made during compromise negotiations. Thus, I will grant defendants' motion to strike.

Accordingly, it is hereby ORDERED that:

1. Defendants' motion to strike, ECF No. 138, is granted.

2. The document filed at ECF No. 136 is stricken.

3. The Clerk of Court is directed to restrict from public view the PDF attached to docket entry ECF No. 136.

Further, it is RECOMMENDED that defendants' motion for summary judgment, ECF No. 135, be denied.

I submit these findings and recommendations to the district judge under 28 U.S.C. § 636(b)(1)(B) and Rule 304 of the Local Rules of Practice for the United States District Court, Eastern District of California. The parties may, within fourteen days of the service of these findings and recommendations, file written objections with the court. Such objections should be captioned "Objections to Magistrate Judge's Findings and Recommendations." That document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." The district judge will review the findings and recommendations under 28 U.S.C. § 636(b)(1)(C).

IT IS SO ORDERED.

Dated:   March 4, 2022

JEREMY D. PETERSON
UNITED STATES MAGISTRATE JUDGE