UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOHN HARDNEY,<br><br>            Plaintiff,<br><br>    v.<br><br>R. WARREN, *et al.*,<br><br>            Defendants. | Case No.  2:16-cv-00172-KJM-JDP (PC)<br><br>FINDINGS AND RECOMMENDATIONS THAT DEFENDANTS' MOTION FOR SUMMARY JUDGMENT BE DENIED<br><br>ECF No. 135<br><br>OBJECTIONS DUE WITHIN 14 DAYS |

Plaintiff John Hardney is a state prisoner proceeding without counsel in this action brought under 42 U.S.C. § 1983. He alleges two claims under the Eighth Amendment: (1) that defendant Kumeh was deliberately indifferent to his serious medical needs by not providing medical treatment after witnessing other staff use force against him; and (2) that defendant Brazil used excessive force against him.[1] Defendants move for summary judgment, arguing that plaintiff cannot show that either defendant violated his Eighth Amendment rights; in the alternative, Kumeh argues that he is entitled to qualified immunity. ECF No. 135. On March 7, 2022, I recommended that defendants motion be denied. ECF No. 144. The district judge

---

[1] The first amended complaint also alleged excessive force and failure-to-intervene claims against three other defendants—Pogue, Hickman, and Almodovar. ECF No. 10. The court previously dismissed those claims, finding them barred under *Heck*'s favorable termination rule. ECF Nos. 82 & 83; *see Heck v. Humphrey*, 512 U.S. 477 (1994).

1

declined to adopt these recommendations, finding that the findings and recommendations were well-taken except that further analysis was needed of Kumeh's qualified immunity argument. ECF No. 150. After expanding my analysis of that argument, I again recommend that defendants' motion for summary judgment be denied.[2]

**Background**

On October 10, 2014, correctional staff informed plaintiff that he was being moved to administrative segregation in response to accusations that he had been masturbating in sight of prison staff. ECF No. 139-1 at 2. Plaintiff was placed in handcuffs and escorted to the prison's medical clinic, where defendant Kumeh—a licensed vocational nurse—was directed to perform a medical examination.[3] *Id*. at 2-3. While Kumeh was conducting the evaluation, an officer slammed plaintiff's face into a plexi-glass window. *Id*. at 3. Plaintiff was then escorted to the prison's program office, approximately fifteen yards away. *Id*. at 3-4; ECF No. 75 at 220. On the way to that office, or upon reaching it, the escorting officer slammed plaintiff's head into a wall and swept his legs out from under him, causing him to fall and hit his head. *See* ECF No. 139-1 at 4. At some point during the incident, plaintiff's forehead was cut, causing blood to run down his face.[4] *Id*. at 3. At his deposition, plaintiff testified that he also briefly lost consciousness, sustained abrasions to his knees, and was in a significant amount of pain. ECF No. 135-9 at 19.

Plaintiff claims that Kumeh was present for the entire incident. *See* ECF No. 139-1 at 4; ECF No. 135-9 at 14-18. He alleges that Kumeh approached him to "observe[] his bleeding face and ignored [his] cry for help." ECF No. 10 at 9; ECF No. 135-9 at 17-18. Kumeh, however, denies that plaintiff sustained any significant injury. Although he does not recall the incident, he states that the medical report that he completed on the same date noted that plaintiff "did not have

---

[2] Plaintiff has recently filed motions to appoint counsel and for mediation, which will be addressed separately. ECF Nos. 145 & 149.

[3] Defendants' motion suggests that plaintiff needed to undergo a medical evaluation before he could be moved to administrative segregation. ECF No. 135-1 at 2.

[4] Plaintiff has provided conflicting statements as to when the cut occurred. In his declaration, he states that he sustained the cut when his face was slammed into the plexi-glass window in the medical clinic. ECF No. 139-1 at 3. Conversely, he testified at his deposition that his fall in the program office caused the cut. ECF No. 139-9 at 15-19. This discrepancy is not material to resolution of the instant motion.

2

any physical injuries."[5] ECF No. 135-4 at 2.

Later that day, defendant Brazil escorted plaintiff to the administrative segregation building and placed him in a holding cell. ECF No. 139-1 at 5. According to plaintiff, Brazil removed his handcuffs and challenged him to a fight. *Id*. When plaintiff remained standing in the cell, Brazil entered, grabbed him, and "slammed [his] head and body from one side of the cage to the other side." *Id*. at 6. After leaving briefly to retrieve a "safety triangle," Brazil handcuffed plaintiff behind his back and moved him to a cell on the second floor. *Id*. Brazil then instructed plaintiff to place his hands in the cell door's food port so that he could remove the handcuffs. *Id*. at 7. Plaintiff contends that he complied, but instead of removing the handcuffs, Brazil attached the safety triangle and pulled hard on it several times, wrenching plaintiff's arms through the food port and causing him to cry out in pain. *Id*. Two other prisoners in the administrative segregation building have attested to seeing plaintiff enter with Brazil, hearing "bodies being slammed against the cage," and, after seeing Brazil escort plaintiff to another cell, hearing plaintiff scream in pain. *Id*. at 27-28.

Plaintiff states that he was left lying on the cell floor, traumatized, surrounded by droplets of his blood, and nursing pain in his head and body. The following morning, he reported suicidal ideation and was taken to the crisis unit. ECF No. 139-1 at 10-12. Medical records from the next few days reflect pain and headaches treated with ibuprofen. ECF No. 135-5 at 10, 12, & 14. An October 11 treatment note shows an abrasion on his knee, and an October 13 record documents an abrasion on his forehead. *Id.* at 9 & 13.

**Legal Standard**

Summary judgment is appropriate where there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Washington Mutual Inc. v. United States*, 636 F.3d 1207, 1216 (9th Cir. 2011). An issue of fact is genuine only if there is sufficient evidence for a reasonable fact finder to find for the non-moving party,

---

[5] Defendants' motion frequently references Kumeh's October 10 report as evidence that plaintiff was not injured on that date. However, defendants did not submit a copy of that report; instead, they ask the court to accept Kumeh's characterization of it.

while a fact is material if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Wool v. Tandem Computs., Inc.*, 818 F.2d 1422, 1436 (9th Cir. 1987).

Rule 56 allows a court to grant summary adjudication, also known as partial summary judgment, when there is no genuine issue of material fact pertains to a claim or a portion of a claim. *See* Fed. R. Civ. P. 56(a); *Lies v. Farrell Lines, Inc.*, 641 F.2d 765, 769 n.3 (9th Cir. 1981) ("Rule 56 authorizes a summary adjudication that will often fall short of a final determination, even of a single claim . . . .") (quotation marks and citation omitted). The same standards apply to both a motion for summary judgment and a motion for summary adjudication. *See* Fed. R. Civ. P. 56(a), (c); *Mora v. Chem-Tronics*, 16 F. Supp. 2d 1192, 1200 (S.D. Cal. 1998).

Each party's position must be supported by (1) citations to particular portions of materials in the record, including but not limited to depositions, documents, declarations, or discovery; or (2) argument showing that the materials cited do not establish the presence or absence of a genuine factual dispute or that the opposing party cannot produce admissible evidence to support its position. *See* Fed. R. Civ. P. 56(c)(1) (quotation marks omitted). The court may consider other materials in the record not cited by the parties, but it is not required to do so. *See* Fed. R. Civ. P. 56(c)(3); *Carmen v. San Francisco Unified Sch. Dist.*, 237 F.3d 1026, 1031 (9th Cir. 2001); *see also Simmons v. Navajo Cnty., Ariz.*, 609 F.3d 1011, 1017 (9th Cir. 2010).

"The moving party initially bears the burden of proving the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). To meet its burden, "the moving party must either produce evidence negating an essential element of the nonmoving party's claim or defense or show that the nonmoving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial." *Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Cos., Inc.*, 210 F.3d 1099, 1102 (9th Cir. 2000). If the moving party meets this initial burden, the burden shifts to the non-moving party "to designate specific facts demonstrating the existence of genuine issues for trial." *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 387 (citing *Celotex Corp.*, 477 U.S. at 323). The non-moving party must "show more than the mere existence of a scintilla of evidence." *Id.* (citing *Anderson*, 477 U.S. at 552). However,

the non-moving party is not required to establish a material issue of fact conclusively in its favor; it is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Assoc.*, 809 F.2d 626, 630 (9th Cir. 1987).

The court must apply standards consistent with Rule 56 to determine whether the moving party has demonstrated there to be no genuine issue of material fact and that judgment is appropriate as a matter of law. *See Henry v. Gill Indus., Inc.*, 983 F.2d 943, 950 (9th Cir. 1993). "[A] court ruling on a motion for summary judgment may not engage in credibility determinations or the weighing of evidence." *Manley v. Rowley*, 847 F.3d 705, 711 (9th Cir. 2017) (citation omitted). The evidence must be viewed "in the light most favorable to the nonmoving party" and "all justifiable inferences" must be drawn in favor of the nonmoving party. *Orr v. Bank of America, NT & SA*, 285 F.3d 764, 772 (9th Cir. 2002); *Addisu v. Fred Meyer, Inc.*, 198 F.3d 1130, 1134 (9th Cir. 2000).

**Analysis**

**A.      Defendant Kumeh**

Plaintiff alleges that defendant Kumeh violated his Eighth Amendment rights when he refused either to provide medical care or to document plaintiff's injuries. "[T]o maintain an Eighth Amendment claim based on prison medical treatment, an inmate must show 'deliberate indifference to serious medical needs.'" *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006) (quoting *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)). The two-prong test for deliberate indifference requires a plaintiff to show (1) "'a serious medical need' by demonstrating that 'failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain,'" and (2) that "the defendant's response to the need was deliberately indifferent." *Jett*, 439 F.3d at 1096 (quoting *McGuckin v. Smith*, 974 F.2d 1050, 1059 (9th Cir. 1992)).

"This second prong—defendant's response to the need was deliberately indifferent—is satisfied by showing (a) a purposeful act or failure to respond to a prisoner's pain or possible medical need and (b) harm caused by the indifference." *Id*. (citing *McGuckin*, 974 F.2d at 1060).

1   Indifference may be manifest "when prison officials deny, delay or intentionally interfere with
2   medical treatment, or it may be shown by the way in which prison physicians provide medical
3   care." *Id*. "Deliberate indifference is a high legal standard." *Toguchi v. Chung*, 391 F.3d 1051,
4   1060 (9th Cir. 2004). "Under this standard, the prison official must not only 'be aware of the
5   facts from which the inference could be drawn that a substantial risk of serious harm exists,' but
6   that person 'must also draw the inference.'" *Id*. at 1057 (quoting *Farmer v. Brennan*, 511 U.S.
7   825, 837 (1994)). "If a prison official should have been aware of the risk, but was not, then the
8   official has not violated the Eighth Amendment, no matter how severe the risk." *Id*. (quoting
9   *Gibson v. Cnty. of Washoe*, 290 F.3d 1175, 1188 (9th Cir. 2002)).
10      Defendant Kumeh argues that plaintiff's evidence is insufficient to satisfy the first prong
11  of the deliberate indifference test: "other than [p]laintiff's own self-reports," he argues that there
12  is no evidence plaintiff had a serious medical need. ECF No. 135-1 at 8. Kumeh contends that
13  medical records—including the report that he completed on the day of the incident—do not
14  support plaintiff's claimed injuries. *Id*.
15      As an initial matter, Kumeh's argument necessarily asks the court to disregard the
16  statements in plaintiff's declaration—statements plaintiff has sworn are based on personal
17  knowledge and "true and correct." ECF No. 139-1 at 1 & 15. Plaintiff's statements constitute
18  evidence that must be considered in deciding defendants' motion for summary judgment. *See*
19  *Johnson v. Meltzer*, 134 F.3d 1393, 1400 (9th Cir. 1998).
20      In his declaration, plaintiff states that Kumeh witnessed a correctional officer slam his
21  head into a plexi-glass window and sweep his legs out from under him, causing him to hit his
22  head on the floor. ECF No. 139-1 at 3-4. He states that, as a result, he briefly lost consciousness
23  and sustained a cut to his forehead, "causing blood to flow down [his] face." *Id.* at 4. These
24  statements alone are enough to raise a genuine dispute as to whether plaintiff had a serious
25  medical need. *See Ortiz v. Imperial*, 884 F.2d 1312, 1313-14 (9th Cir. 1989) (holding that a
26  plaintiff who "fell and struck his head . . . had a serious medical need"); *Scalia v. Cty. of Kern*,
27  308 F. Supp. 3d 1064, 1077 (E.D. Cal. 2018) (finding that allegations of serious blows to the head
28  "easily meet the first prong . . . because of the risk of a traumatic brain injury"). And there is no

merit to defendants' argument that plaintiff's statements are unsupported by his medical records. ECF No. 135-1 at 8. Plaintiff reported headaches and pain in the days following the altercation, and treatment notes show abrasions on his forehead and knee. ECF No. 135-5 at 9-14.[6]

With respect to the second prong, plaintiff attests that Kumeh saw an officer slam his head into both plexiglass and concrete, and, although Kumeh saw that plaintiff was bleeding from his forehead, ignored his pleas for help. *See* ECF No. 139-1 at 4; ECF No. 135-8 at 14-15. Kumeh attests that he does not recall the incident and provides only a perfunctory denial, stating that "[i]f he had observed injuries on Mr. Hardney, [he] would have documented them," and that if any "injuries required medical treatment, [he] would have provided medical treatment." ECF No. 135-4 at 2. There are genuine disputes of material fact as to whether Kumeh knew that plaintiff had suffered serious blows to the head and whether he deliberately ignored plaintiff's requests for help. This is sufficient at the summary judgment stage to support a claim of deliberate indifference. *See Jett*, 439 F.3d at 1098 (holding that prison medical personnel are "liable for deliberate indifference when they knowingly fail to respond to an inmate's requests for help").

Kumeh argues that even if plaintiff was injured, his claim fails because the alleged inaction amounted only to a brief delay, and plaintiff cannot "show that the delay caused significant harm." ECF No. 135-1 at 9. However, "[a] prisoner need not show his harm was substantial." *Jett*, 439 F.3d at 1096. Such a showing merely "provide[s] additional support for the inmate's claim that the defendant was deliberately indifferent to his needs." *Id.*; *see also McGuckin*, 974 F.2d at 1050 ("[A] finding that a defendant's actions . . . resulted in significant injury to a prisoner is [not] required in order to establish a violation . . . [, although such a]

---

[6] Defendants note that plaintiff's forehead abrasion was only documented on October 12, 2014. ECF No. 135-1 at 8. They argue that since earlier examinations did not identify a similar abrasion, "it is likely the forehead abrasion occurred *after* [p]laintiff's interaction with Kumeh on October 10." *Id.* (emphasis in original). But absent evidence indicating that a separate use of force caused the forehead abrasion, a reasonable jury could conclude that it was caused by altercations that Kumeh witnessed. *See Orr*, 285 F.3d at 772 (holding that on summary judgment, the court must view "the evidence in the light most favorable to the nonmoving party and draw[] all justifiable inference in its favor").

7

1  finding provides great support for a claim that a defendant was 'deliberately indifferent' to the
2  inmate's medical needs."). Where a plaintiff shows that a prison medical staff member knew of
3  his serious medical needs and deliberately refused to render treatment or medical attention, the
4  plaintiff need only show that the denial inflicted pain or suffering. *See Estelle*, 429 U.S. at 103
5  ("In less serious cases, denial of medical care may result in pain and suffering which no one
6  suggests would serve any penological purpose. The infliction of such unnecessary suffering is
7  inconsistent with contemporary standards of decency as manifested in modern legislation.");
8  *McGuckin*, 974 F.2d at 1059 (explaining that the "unnecessary and wanton infliction of pain"
9  constitutes a violation of the Eighth Amendment).

10  Plaintiff attests that Kumeh wholly ignored his requests for help, and Kumeh offers no
11  indication either that he intended to return later to evaluate plaintiff or that he believed plaintiff
12  would eventually receive medical attention. In evaluating Kumeh's subjective deliberate
13  indifference, the fact that plaintiff eventually received attention from other providers cannot
14  convert Kumeh's denial of care into a mere delay of care. Thus, plaintiff's attestations of pain,
15  headaches, and psychological trauma are sufficient to create a genuine dispute of fact as to
16  whether Kumeh's conduct resulted in an unnecessary and wanton infliction of pain. *See Williams*
17  *v. Sotelo*, 295 F. App'x 208 (9th Cir. 2008) (finding that the plaintiff "suffer[ed] a constitutional
18  injury" when he was forced to wait at least an hour with severe chest pains before receiving
19  medical attention); *Harris v. Kennedy*, No. 2:16-cv-0588 DB P, 2018 WL 347798, at *7-8 (E.D.
20  Cal. Jan. 9, 2018) (plaintiff's "failure to show that the [approximately nine-hour] delay in care
21  [for cuts on his wrists] exacerbated his injury" did not warrant summary judgment because
22  "deliberate indifference to a plaintiff's pain is actionable"); *Nelson v. Butte Cnty. Sheriff's Dept.*,
23  CIV S-09-2776 EFB P, 2012 WL 812385, at *26 (E.D. Cal. Mar. 9, 2012) (denying summary
24  judgment to prison medical provider who forced prisoner to wait approximately one week for
25  medical attention for head pain after he was beaten by officers, explaining that "whether this
26  delay amounted to an unnecessary and wanton infliction of pain is a question that must be
27  decided by a jury").
28

### B. Qualified Immunity

Alternatively, Kumeh lays claim to qualified immunity. To assess whether qualified immunity attaches, a court asks "two questions: (1) whether the facts, taken in the light most favorable to the non-moving party, show that the official's conduct violated a constitutional right, and (2) whether the law at the time of the challenged conduct clearly established that the conduct was unlawful." *Felarca v. Birgeneau*, 891 F.3d 809, 815 (9th Cir. 2018). An "official's conduct violates clearly established law when, at the time of the challenged conduct, 'the contours of a right are sufficiently clear' that every 'reasonable official would have understood that what he is doing violates that right.'" *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)). "While there does not have to be a case directly on point, existing precedent must place the lawfulness of the particular [action] beyond debate." *City of Escondido v. Emmons*, 139 S. Ct. 500, 504 (2019). "This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful; but it is to say that in the light of pre-existing law the unlawfulness must be apparent." *Hope v. Pelzer*, 536 U.S. 730, 739 (2002) (citations omitted); *see also Taylor v. Riojas*, 141 S. Ct. 52, 53-54 (2020) ("'[A] general constitutional rule already identified in the decisional law may apply with obvious clarity to the specific conduct in question.'") (quoting *Hope*, 536 U.S. at 741).

Having addressed the first question above, I turn to whether the right at issue was clearly established. "[T]he right allegedly violated must be defined at the appropriate level of specificity before a court can determine if it was clearly established." *Gordon v. Cnty. of Orange*, 6 F.4th 961, 969 (9th Cir. 2021) (internal citations omitted). In defining the right, courts have been mindful that "casting an allegedly violated right too particularly, 'would be to allow the instant defendants, and future defendants, to define away all potential claims.'" *Id.* (quoting *Kelley v. Borg*, 60 F.3d 664, 667 (9th Cir. 1995). Viewing the facts in the light most favorable to plaintiff, Kumeh witnessed an officer slam plaintiff's head into a plexiglass wall, then hit plaintiff's head against a second wall, and finally sweep his legs out from under him with his hands behind his back, causing him to fall and hit his head on the floor. Kumeh observed plaintiff in significant pain and bleeding from a laceration to his forehead, but ignored his pleas for medical attention.

9

As a result of the force and the lack of treatment, plaintiff claims to have suffered headaches and pain at least until the following day, when he reported that he was suicidal and was taken to see staff in the crisis unit. Kumeh has not asserted that he believed plaintiff would receive medical attention from another source or claimed that he had planned to return later to examine plaintiff. Accordingly, the question is whether it was well established that a prisoner suffers a violation of his or her Eighth Amendment rights when medical personnel deliberately ignore requests for help after witnessing the prisoner suffer significant blows to the head.

It was clearly established at the time of the incident that a prisoner suffers a violation of his Eighth Amendment rights when he has a serious medical need and prison officials "purposefully ignore or fail to respond to [his] pain or possible medical need." *McGuckin*, 974 F.2d at 1060; *Jett*, 439 F.3d at 1098 ("[Prison medical personnel] are liable for deliberate indifference when they knowingly fail to respond to an inmate's requests for help."). It was, moreover, clearly established that a prisoner presents an objectively serious medical need when he falls and sustains a head injury. *See Ortiz*, 884 F.2d at 1312 (holding that a detainee had a serious medical need when, after falling and hitting his head before being taken into custody, he began to exhibit symptoms of a head injury).

Although *Ortiz* establishes that the possibility of a head injury from even a single fall can constitute a serious injury, there are distinctions between *Ortiz* and the case at hand that merit elaboration. The defendants in *Ortiz* had received express warnings from a prior doctor that the plaintiff's head injury could present complications. *See Ortiz*, 884 F.2d at 1312-13. When the plaintiff began to exhibit symptoms of such complications—including falling a second time—the defendants prescribed him sedatives that were contraindicated, eventually causing his death. *Id.*[7]

---

[7] Because the decedent in *Ortiz* was a pretrial detainee, that case was analyzed under the Fourteenth Amendment due process guarantee of adequate medical care, rather than under the corresponding Eighth Amendment right. *See Ortiz*, 884 F.2d at 1314. In *Gordon v. Cnty. of Orange*, 888 F.3d 1118, 1124-25 (9th Cir. 2018), the Ninth Circuit adopted a more restrictive deliberate-indifference standard in pretrial detention cases; however, at the time *Ortiz* was decided until after the events at issue here, "the Eighth Amendment and Fourteenth Amendment standards were precisely the same," *Sandoval v. Cnty. of San Diego*, 985 F.3d 657, 668 (9th Cir. 2021). Therefore, this distinction is not material.

1   In contrast, Kumeh was not acting in defiance of a prior physician's guidance, he had not been
2   directly informed by another medical professional that plaintiff had a head injury, and plaintiff
3   did not die as a result of the denial. In light of the "emphasis on identifying clearly established
4   law particularized to the facts of the case," *Moonin v. Tice*, 868 F.3d 853, 868 (9th Cir. 2017)
5   (internal marks omitted), these distinctions are significant.

6   Nevertheless, Kumeh should be denied qualified immunity for two reasons. First, the
7   second prong had been clearly established by more general controlling Ninth Circuit authority,
8   which left no doubt that officials "are liable for deliberate indifference when they knowingly fail
9   to respond to an inmate's requests for help," *Jett*, 439 F.3d at 1098, and that when such wanton
10  disregard is evident, it is sufficient that the "denial of medical care . . . result[ed] in pain and
11  suffering which no one suggests would serve any penological purpose," *Estelle,* 429 U.S. at 103.
12  *See also McGuckin*, 974 F.2d at 1059 (explaining that the Eighth Amendment proscribes the
13  "unnecessary and wanton infliction of pain"). As shown above, there is a factual dispute as to
14  whether Kumeh knowingly ignored plaintiff's pleas for help and whether, as a consequence,
15  plaintiff endured unnecessary pain and suffering.

16  Second, persuasive authority supports the notion that any reasonable medical official
17  would recognize head injuries like plaintiff's as presenting an obvious risk of future harm. *Cf.*
18  *Moonin*, 868 F.3d at 872 ("Because there is limited controlling precedent on point, we turn to
19  persuasive authority."). In *Murphy v. Walker*, the Seventh Circuit held that "corrections officers
20  were deliberately indifferent" to the plaintiff's serious medical needs when they refused to
21  provide treatment after he "slipped and fell while taking a shower . . . , sustaining what he
22  describe[d] as a severe head injury." 51 F.3d 714, 719 (7th Cir. 1995). The court explained that
23  "[a]ny injury to the head unless obviously superficial should ordinarily be considered serious and
24  merits attention until properly diagnosed as to severity." *Id.* Even though, as in this case, the
25  plaintiff's only subsequent harm was "prolonged pain and discomfort," the court explained that
26  because of the significant risks, "injuries of the cranial cavity can and should be treated within a
27  matter of minutes or hours rather than after several days, weeks, or months." *Id.* at 719 & n.12.
28  These holdings are echoed in an abundance of cases addressing similar circumstances.

11

1  *See, e.g.*, *Barnett v. Luttrell*, 414 F. App'x 784, 788 (6th Cir. 2011) (holding that a prison nurse
2  exhibited deliberate indifference to a prisoner's serious medical needs when she abandoned him
3  after he fell and struck his head); *Griffin v. Mortier*, 837 F. App'x 166, 171 (4th Cir. 2020)
4  (holding that a prisoner had a serious medical need when he fell and hit his head, complained of
5  ear pain, and bled from the nose); *Vargas v. Howell*, No. 2:14-CV-1942-JCM-CWH, 2015 WL
6  4508761, at *9 (D. Nev. July 23, 2015) (denying qualified immunity to prison officials who
7  forced a plaintiff who had endured "several punches and kicks to the head" to wait for two and a
8  half hours before receiving an examination and to a nurse who then conducted only a "cursory
9  examination," since "facial bruising, cuts, and bleeding eye should have put [the] defendant
10 [nurse] on notice of the potential for other serious head injuries"); *Nelson*, 2012 WL 812385, at
11 *26 (denying summary judgment to prison medical provider who forced prisoner to wait eight
12 days after he was beaten by officers and began complaining of head pain); *Jameson v. Rawers*,
13 1:03-CV-05593-LJO, 2011 WL 5873304, at *3 (E.D. Cal. Nov. 22, 2011) ("Any reasonable
14 official should know that denial of treatment to a patient complaining of broken bones and a head
15 injury would constitute deliberate indifference to serious medical needs in violation of the Eighth
16 Amendment."); *Hurst v. Derr*, No. 22-00171 DKW-RT, 2022 WL 1444518, at *6 (D. Haw., May
17 6, 2022) (failure to evaluate for concussion despite reporting head pain, dizziness, and visible
18 head injuries constitutes deliberate indifference); *see also Scalia v. Cnty. of Kern*, 493 F. Supp. 3d
19 890, 900 (E.D. Cal. 2019) (denying qualified immunity to a nurse who provided only a brief
20 examination of a pretrial detainee who had fallen five feet onto concrete, "given the obviously
21 high risk of severe consequences from a possible traumatic head injury").[8]

22  For their part, defendants neither attempt to distinguish *Ortiz* nor identify any circuit-level

---

[8] Unlike *Ortiz* and *Murphy*, the court in *Scalia* considered the plaintiff's claims under the modified "objective" deliberate-indifference standard. *See* 493 F. Supp. 3d 890, 899 (citing *Gordon*, 888 F.3d at 1124-25). Despite this distinction, the court relied on analogous reasoning to conclude that it "was clearly established at the time of the incident such that a reasonable nurse would have understood her conduct to be unlawful in that situation." *Id.* at 900 (citing *Ortiz*, 884 F.2d at 1314; *McGuckin*, 974 F.2d 1050; and *Clement v. Gomez*, 298 F.3d 898, 906 (9th Cir. 2002), for the proposition that "it is 'clearly established that the officers [may] not intentionally deny or delay access to medical care' to pretrial detainees").

1  precedent that supports their view.  Instead, defendants largely rehash their arguments that
2  Kumeh did not commit a constitutional violation.  *See* ECF No. 135 at 11-12.  They cite two
3  cases from district courts in other circuits and one unpublished case from this district to support
4  their position that "[p]laintiff's quarter-inch abrasions do not amount to [a] serious medical need[]
5  for Eighth Amendment purposes."  *See id.* at 11-12 (citing *Vilchis v. City of Bakersfield*, No.
6  1:10-cv-00893, 2012 WL 113747, *12 (E.D. Cal., Jan. 13, 2012)).  They also reiterate their
7  argument that plaintiff was subjected to only a short delay before receiving treatment.  ECF No.
8  135-1 at 12.  For the reasons above, these arguments are unavailing.

In light of controlling Ninth Circuit precedent, the absence of contrary authority, and the presence of factually similar persuasive authority, I conclude that any reasonable prison medical official would have known that ignoring or refusing to evaluate or treat an apparent head injury constituted deliberate indifference in violation of the Eighth Amendment.  *See Moonin*, 868 F.3d at 873-74 (denying qualified immunity because controlling Ninth Circuit authority established the applicable general rules and cases from three other circuit courts and several district courts were sufficiently particularized to show a "robust consensus" in the context at issue); *Ward v. San Diego Cnty.*, 791 F.2d 1329, 1333 (9th Cir. 1986) (denying qualified immunity on the basis of one Seventh Circuit case and an absence of contrary authority); *Newell v. Sauser*, 79 F.3d 115, 118 (9th Cir. 1996) (holding that the law had been clearly established by two published cases from the Seventh and Fifth Circuits).  Accordingly, Kumeh should not be granted qualified immunity, and his motion for summary judgment should be denied.

### B.     Defendant Brazil

The Eighth Amendment prohibits use of "excessive physical force" against inmates. *Wilkins v. Gaddy*, 559 U.S. 34 (2010) (per curiam); *Hudson v. McMillian*, 503 U.S. 1, 8-9 (1992). For claims arising out of the use of excessive physical force, the core inquiry is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Wilkins*, 559 U.S. at 37 (quoting *Hudson*, 503 U.S. at 7).  To facilitate this inquiry, the Supreme Court has articulated five factors to consider: "(1) the extent of injury suffered by an inmate; (2) the need for application of force; (3) the relationship between that need

and the amount of force used; (4) the threat reasonably perceived by the responsible officials; and (5) any efforts made to temper the severity of a forceful response." *Hudson*, 503 U.S. at 7.

Defendant Brazil argues that plaintiff's allegations are implausible because his observed injuries—a "small abrasion" on his knee, an abrasion on his forehead, "a couple 'knots' on his head," and a sprained left wrist—do not align with his allegations that "Brazil slammed his head against the steel sides of a holding cell, and also used a retention triangle chain device to pull [his] handcuffs . . . and arm through the food port." ECF No. 135-1 at 11. Brazil also questions whether plaintiff's injuries can be attributed to him, given plaintiff's other allegations and the piecemeal nature of plaintiff's diagnoses over the course of several days.

The Eighth Amendment is violated whenever "prison officials maliciously and sadistically use force to cause harm . . .[,] whether or not significant injury is evident." *Hudson*, 503 U.S. at 9. To be sure, "the prohibition of cruel and unusual punishment necessarily excludes from constitutional recognition de minimis uses of physical force," such as a "push or shove that causes no discernible injury." *Wilkins*, 559 U.S. at 37 (internal citations and quotation marks omitted). But the extent of injury suffered is merely a proxy for that determination: "[i]njury and force . . . are only imperfectly correlated, and it is the latter that ultimately counts." *Id*. at 38. "An inmate who is gratuitously beaten by guards does not lose his ability to pursue an excessive force claim merely because he has the good fortune to escape without serious injury." *Id*.

Plaintiff provided a sworn declaration attesting that Brazil removed his handcuffs, challenged him to fight, and slammed him against the walls of a holding cell, before needlessly and repeatedly pulling his arms through a food port while they were handcuffed behind his back. Subsequent medical evaluations identified abrasions on his head, knee, and wrist, diagnosed him with a sprained wrist, and prescribed painkillers for a headache that lasted at least four days. While the injuries could have been worse, they do not require a rejection of his allegations.

Brazil cites *Solomon v. Felker*, in which the court granted summary judgment to defendants "after finding that the plaintiff-prisoner's allegations that officers had beaten him were not supported by the medical record." ECF No. 135-1 at 10 (citing No. 2:08-cv-2544-KJN (P), 2015 WL 1469165 (E.D. Cal. Mar. 30, 2015)). But the court in *Solomon* found that defendants

had met their burden by proffering several declarations that disputed the plaintiff's account of the incident, undermining the unsupported allegations in the complaint. *Solomon*, 2015 WL 1469165 at *6-9. In contrast, plaintiff has submitted a sworn declaration, and there is no evidence rebutting plaintiff's description of Brazil's use of force. Thus, Brazil has failed to show the absence of a genuine dispute of material fact.

It is RECOMMENDED that defendants' motion for summary judgment, ECF No. 135, be denied.

I submit these findings and recommendations to the district judge under 28 U.S.C. § 636(b)(1)(B) and Rule 304 of the Local Rules of Practice for the United States District Court, Eastern District of California. The parties may, within fourteen days of the service of these findings and recommendations, file written objections with the court. Such objections should be captioned "Objections to Magistrate Judge's Findings and Recommendations." That document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." The district judge will review the findings and recommendations under 28 U.S.C. § 636(b)(1)(C).

IT IS SO ORDERED.

Dated:    December 2, 2022

JEREMY D. PETERSON
UNITED STATES MAGISTRATE JUDGE

15